<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

RAYMOND RUIZ,                        :
                                     :   Civil Action No. 09-4259 (RBK)
              Plaintiff,             :
                                     :
                                     :
         v.                          :   **OPINION**
                                     :
KEVIN STILLS, CUMBERLAND             :
COUNTY JAIL CORRECTION               :
OFFICER,                             :
                                     :
              Defendant.             :

**APPEARANCES:**

        RAYMOND RUIZ, Plaintiff <u>pro se</u>
        #69969
        Cumberland County Jail
        P.O. Box 717
        Bridgeton, New Jersey 08302

**KUGLER**, District Judge

        Plaintiff, Raymond Ruiz, a state inmate currently confined

at the Cumberland County Jail in Bridgeton, New Jersey, seeks to

bring this action <u>in forma pauperis</u>.  Based on his affidavit of

indigence and the absence of three qualifying dismissals within

28 U.S.C. § 1915(g), the Court will grant plaintiff's application

to proceed <u>in forma pauperis</u> ("IFP") pursuant to 28 U.S.C.

§ 1915(a) (1998) and order the Clerk of the Court to file the

Complaint.

        At this time, the Court must review the Complaint, pursuant

to 28 U.S.C. §§ 1915(e)(2) and 1915A, to determine whether it

should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.  For the reasons set forth below, the Court concludes that the Complaint should proceed in part.

I.  <u>BACKGROUND</u>

Plaintiff, Raymond Ruiz ("Ruiz"), brings this civil action, pursuant to 42 U.S.C. § 1983.  The following factual allegations are taken from the Complaint, and are accepted for purposes of this screening only.  The Court has made no findings as to the veracity of plaintiff's allegations.

Ruiz alleges that, on July 6, 2009, around 12:45 p.m. to 1:15 p.m., he was collecting trays during lock down.  Another inmate started to question why there was a lock down, and Ruiz said to "drop a request slip or drop a grievance."  Defendant, Correction Officer ("CO") Kevin Stills, told plaintiff to "shut up" and "do your job," to which plaintiff replied that he was doing his job.  Plaintiff started talking to himself about how difficult it was to work under such pressure.  Ruiz passed CO Stills with the tray cart, and Stills assaulted plaintiff by grabbing plaintiff from behind, slamming plaintiff against a wall, and using his forearm to choke plaintiff with such force that plaintiff almost passed out.  Stills also yelled abusive language at Ruiz.  Ruiz asked Stills why he choked him and Stills

allegedly pulled out pepper spray.  Ruiz states that he tried to talk Stills down, but Stills got in a fighting stance and told plaintiff to "rock."

Stills then rushes Ruiz, throws Ruiz against the wall and punches him.  Ruiz tries to hold Stills, but other correctional officers arrive and force plaintiff to the ground.  Ruiz was handcuffed and his arm was twisted.  He was taken to the sergeant's desk and then to the nurse for care of his bruises. Ruiz was then taken to pre-detention lock-up, where he stayed until July 16, 2009, about nine days.  During this time, no disciplinary charges were issued to him.  However, after he complained about detention and the new cell where he has to sleep on the floor, he was served with disciplinary charges on July 19, 2009, for refusing to obey an order of a staff member, fighting, and conduct which disrupts or interferes with the security or orderly running of the correctional facility.  His disciplinary hearing was scheduled for July 21, 2009.  After plaintiff gave his statement, the hearing officer told him to forget about it and gave an order that plaintiff be returned to H-block without lock-down.

Ruiz asks for injunctive relief, namely, that the defendant be terminated or put on probation.  He also asks for an unspecified amount in monetary compensation for his injuries Ruiz believes that the incident was captured on videotape.

3

## II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in</u> <u>forma</u> <u>pauperis</u> or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua</u> <u>sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  This action is subject to <u>sua</u> <u>sponte</u> screening for dismissal under both 28 U.S.C. § 1915(e)(2)(B) an § 1915A.

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>See</u> <u>Erickson v. Pardus</u>, 551 U.S. 89, 93-94 (2007)(following <u>Estelle v. Gamble</u>, 429 U.S. 97, 106 (1976) and <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972)).  <u>See</u> <u>also</u> <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court

need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  <u>See also</u> <u>Erickson</u>, 551 U.S. at 93-94 (In a pro se prisoner civil rights complaint, the Court reviewed whether the complaint complied with the pleading requirements of Rule 8(a)(2).

However, recently, the Supreme Court refined this standard for summary dismissal of a Complaint that fails to state a claim in <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1937 (2009).  The issue before the Supreme Court was whether Iqbal's civil rights complaint adequately alleged defendants' personal involvement in discriminatory decisions regarding Iqbal's treatment during detention at the Metropolitan Detention Center which, if true, violated his constitutional rights.  <u>Id</u>.  The Court examined Rule

8(a)(2) of the Federal Rules of Civil Procedure which provides that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).[1]  Citing its recent opinion in Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), for the proposition that "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do,' "Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 555), the Supreme Court identified two working principles underlying the failure to state a claim standard:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice ... .  Rule 8 ... does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).

Iqbal, 129 S.Ct. at 1949-1950 (citations omitted).

The Court further explained that

> a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than

---

[1]  Rule 8(d)(1) provides that "[e]ach allegation must be simple, concise, and direct.  No technical form is required." Fed.R.Civ.P. 8(d).

> conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausible give rise to an entitlement to relief.

Iqbal, 129 S.Ct. at 1950.

Thus, to prevent a summary dismissal, civil complaints must now allege "sufficient factual matter" to show that a claim is facially plausible.  This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  Id. at 1948.  The Supreme Court's ruling in Iqbal emphasizes that a plaintiff must demonstrate that the allegations of his complaint is plausible.  Id. at 1949-50; see also Twombly, 505 U.S. at 555, & n.3; Fowler v. UPMC Shadyside, ___ F.3d ___, 2009 WL 2501662, *4 (3d Cir., Aug. 18, 2009).

Consequently, the Third Circuit observed that Iqbal provides the "final nail-in-the-coffin" for the "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41, 45-46 (1957),[2] that applied to federal complaints before Twombly.  Fowler, 2009 WL 2501662, *5.  The Third Circuit now requires that a district

---

[2]  In Conley, as stated above, a district court was permitted to summarily dismiss a complaint for failure to state a claim only if "it appear[ed] beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.  Id., 355 U.S. at 45-46.  Under this "no set of facts" standard, a complaint could effectively survive a motion to dismiss so long as it contained a bare recitation of the claim's legal elements.

court must conduct the two-part analysis set forth in Iqbal when presented with a motion to dismiss:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [Iqbal, 129 S.Ct. at 1949-50]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." [Id.] In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. See Phillips, 515 F.3d at 234-35. As the Supreme Court instructed in Iqbal, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" Iqbal, [129 S.Ct. at 1949-50]. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id.

Fowler, 2009 WL 2501662, *5.

This Court is mindful, however, that the sufficiency of this pro se pleading must be construed liberally in favor of Plaintiff, even after Iqbal. See Erickson v. Pardus, 551 U.S. 89 (2007). Moreover, a court should not dismiss a complaint with prejudice for failure to state a claim without granting leave to amend, unless it finds bad faith, undue delay, prejudice or futility. See Grayson v. Mayview State Hosp., 293 F.3d 103, 110-111 (3d Cir. 2002); Shane v. Fauver, 213 F.3d 113, 117 (3d Cir. 2000).

### III. SECTION 1983 ACTIONS

Ruiz brings this action pursuant to 42 U.S.C. § 1983. Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   ANALYSIS

A.   Excessive Force Claim

    The allegations in Ruiz's Complaint may be construed as asserting an excessive force claim in violation of the Eighth and Fourteenth Amendments.  See Graham v. Connor, 490 U.S. 386, 392-394 (1989)(cases involving the use of force against convicted individuals are examined under the Eighth Amendment's proscription against cruel and unusual punishment, cases involving the use of force against pretrial detainees are examined under the Fourteenth Amendment, and cases involving the use of force during an arrest or investigatory stop are examined under the Fourth Amendment).  Because it is not clear whether plaintiff is a convicted prisoner awaiting sentencing or a

9

pretrial detainee, this Court will analyze the excessive force claim under both the Eighth Amendment standard and the due process standard under the Fourteenth Amendment.

"The Eighth Amendment, in only three words, imposes the constitutional limitation upon punishments:  they cannot be 'cruel and unusual.'"  Rhodes v. Chapman, 452 U.S. 337, 345 (1981).  The Eighth Amendment prohibits conditions which involve the unnecessary and wanton infliction of pain or are grossly disproportionate to the severity of the crime warranting imprisonment.  Id. at 347.  The cruel and unusual punishment standard is not static, but is measured by "the evolving standards of decency that mark the progress of a maturing society."  Id. at 346 (quoting Trop v. Dulles, 356 U.S. 86, 101 (1956)).  To state a claim under the Eighth Amendment, an inmate must satisfy an objective element and a subjective element. Farmer v. Brennan, 511 U.S. 825, 834 (1994).

The objective element questions whether the deprivation of a basic human need is sufficiently serious; the subjective component asks whether the officials acted with a sufficiently culpable state of mind.  Wilson v. Seiter, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  Hudson v. McMillian, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  See Farmer, 511 U.S. at

10

834 (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes</u>, 452 U.S. at 345.  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  <u>Id.</u> at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted";

11

> (4) "the extent of the threat to the safety of staff
> and inmates, as reasonably perceived by responsible
> officials on the basis of the facts known to them"; and
> (5) "any efforts made to temper the severity of a
> forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting

Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force

is "excessive" and will give rise to the level of a

constitutional violation.  See Hudson, 503 U.S. at 9 (it is clear

that not "every malevolent touch by a prison guard gives rise to

a federal cause of action").  Therefore, "[n]ot every push or

shove, even if it may later seem unnecessary in the peace of a

judge's chambers, violates a prisoner's constitutional rights."

Id. at 9-10.

Here, Ruiz alleges that he was assaulted by CO Stills

without provocation, and even after he was restrained by

handcuffs.  Ruiz further alleges that he sustained bodily injury

that required medical treatment.[3]  Therefore, based on the

allegations in the Complaint, if true, it would appear that Ruiz

has asserted facts that may be sufficient to suggest that CO

Stills exhibited malicious and sadistic conduct intended to cause

---

[3] "[T]he Eighth Amendment analysis must be driven by the
extent of the force and the circumstances in which it is applied;
not by the resulting injuries."  Smith v. Mensinger, 293 F.3d
641, 648 (3d Cir. 2002).  Thus, the pivotal inquiry in reviewing
an excessive force claim is whether the force was applied
maliciously and sadistically to cause harm.  Id. at 649; Brooks,
204 F.3d at 106.  Otherwise, an inmate "could constitutionally be
attacked for the sole purpose of causing pain as long as the
blows were inflicted in a manner that resulted" in injuries that
were de minimis.  Id.

plaintiff pain.  Such conduct, if true, is "repugnant to the
conscience of mankind" absent extraordinary circumstances
necessary to justify that kind of force.  <u>Hudson</u>, 503 U.S. at 10.

To the extent that Ruiz was a pretrial detainee at the time
the incident occurred, the standard applied in an excessive force
claim involving pretrial detainees differs only slightly.  A pre-
trial detainee is protected by the Due Process Clause of the
Fourteenth Amendment.  <u>See</u> <u>Bell v. Wolfish</u>, 441 U.S. 520, 535,
n.16, 545 (1979); <u>City of Revere v. Massachusetts General
Hospital</u>, 463 U.S. 239, 244 (1983); <u>Fuentes v. Wagner</u>, 206 F.3d
335, 341 n.7, 9 (3d Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 821 (2000);
<u>Monmouth County Correctional Institutional Inmates v. Lanzaro</u>,
834 F.2d 326, 346 n.31 (3d Cir. 1987), <u>cert. denied</u>, 486 U.S.
1006 (1988).

Analysis of whether a detainee or un-sentenced prisoner has
been deprived of liberty without due process is governed by the
standards set out by the Supreme Court in <u>Bell v. Wolfish</u>, 441
U.S. 520 (1979).  <u>Fuentes</u>, 206 F.3d at 341-42.

> In evaluating the constitutionality of conditions or
> restrictions of pretrial detention that implicate only the
> protection against deprivation of liberty without due
> process of law, we think that the proper inquiry is whether
> those conditions amount to punishment of the detainee.  For
> under the Due Process Clause, a detainee may not be punished
> prior to an adjudication of guilt in accordance with due
> process of law. ...
>
> Not every disability imposed during pretrial detention
> amounts to "punishment" in the constitutional sense,
> however.  Once the government has exercised its conceded
> authority to detain a person pending trial, it obviously is

> entitled to employ devices that are calculated to effectuate this detention. ...
>
> A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose. Absent a showing of an expressed intent to punish on the part of detention facility officials, that determination generally will turn on "whether an alternative purpose to which [the restriction] may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned [to it]." Thus, if a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." Conversely, if a restriction or condition is not reasonably related to a legitimate goal--if it is arbitrary or purposeless--a court permissibly may infer that the purpose of the governmental action is punishment that may not constitutionally be inflicted upon detainees qua detainees. ...

Bell, 441 U.S. at 535-39 (citations omitted).  The Court further explained that the government has legitimate interests that stem from its need to maintain security and order at the detention facility.  "Restraints that are reasonably related to the institution's interest in maintaining jail security do not, without more, constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial."  Id. at 540.  Retribution and deterrence, however, are not legitimate nonpunitive governmental objectives.  Id. at 539 n.20.  Nor are grossly exaggerated responses to genuine security considerations.  Id. at 539 n.20, 561-62.

Under this standard, for purposes of surviving dismissal at this preliminary stage, plaintiff has adequately alleged that CO Stills used excessive force against him in violation of his constitutional rights.  The allegations may support a claim that plaintiff was viciously assaulted by CO Stills for no apparent reason other than to "punish" him.  There are no allegations that plaintiff was himself attacking or provoking the defendant when CO Stills assaulted him.  Under these circumstances, if true, Ruiz may be able to prove that CO Stills' actions were a grossly exaggerated response.

Therefore, this Court finds that Ruiz has alleged facts sufficient to support an excessive force claim under either the Eighth or Fourteenth Amendment, and this claim will be allowed to proceed at this time.

B.  <u>Disciplinary Charge</u>

Ruiz also appears to be asserting a claim regarding the false disciplinary charge issued against him and the time that he spent in disciplinary detention.  He alleges that the disciplinary charge was eventually dismissed, but he was confined in disciplinary detention from July 6, 2009 to July 21, 2009, where he had to sleep on the floor.

The act of filing false disciplinary charges does not itself violate a prisoner's constitutional rights.  <u>See</u> <u>Freeman v. Rideout</u>, 808 F.2d 949, 952-53 (2d Cir. 1986)(holding that "the mere filing of [a false] charge itself" does not constitute a

15

cognizable claim under § 1983 so long as the inmate "was granted
a hearing, and had the opportunity to rebut the unfounded or
false charges"), <u>cert</u>. <u>denied</u>, 485 U.S. 982 (1988); <u>Hanrahan v.
Lane</u>, 747 F.2d 1137, 1140 (7th Cir. 1984)(finding that so long as
prison officials provide a prisoner with the procedural
requirements outlined in <u>Wolff v. McDonnell</u>, 418 U.S. 539, 558
(1974), then the prisoner has not suffered a constitutional
violation).  <u>See also</u> <u>Creter v. Arvonio</u>, No. 92-4493, 1993 WL
306425, at *7 (D.N.J. Aug. 5, 1993); <u>Duncan v. Neas</u>, No. 86-109,
1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988)(determining that "the
alleged knowing falsity of the charge [does not state] a claim of
deprivation of a constitutionally protected liberty interest ...
where procedural due process protections were provided").  In
this case, Ruiz does not allege that he was denied an
institutional disciplinary hearing or an opportunity to present
evidence.  In fact, it appears from plaintiff's allegations in
the Complaint that the disciplinary charges were eventually
dropped.  Therefore, Ruiz has failed to state a cognizable claim
under § 1983 with respect to the alleged false disciplinary
charges.

     As to the time Ruiz spent in disciplinary detention, and the
conditions of such confinement, this Court also finds that
plaintiff has failed to state a cognizable claim of
constitutional dimension.

A plaintiff may establish a due process violation by demonstrating that he was deprived of a protected liberty interest.  Fraise v. Terhune, 283 F.3d 506, 522 (3d Cir. 2002). Liberty interests may arise either from the Due Process clause itself or from state-created entitlements.  Shoats v. Horn, 213 F.3d 140, 143 (3d Cir. 2000).  When the degree of confinement or conditions to which an inmate is subjected are within the sentence imposed and do not otherwise violate the Constitution, the inmate's rights under the Due process clause generally are not implicated.  Fraise, 283 F.3d at 522.  However, a state-created liberty interest may be unconstitutionally deprived when the prison "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995).  Lesser restraints on an inmate's freedom are deemed to fall "within the expected parameters of the sentence imposed by a court of law."  Id. Thus, "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight."  Montanye v. Haymes, 427 U.S. 236, 242 (1976), quoted in Sandin, 515 U.S. at 480.  See also Asquith, 186 F.3d at 410-11 (no liberty interest under the Due Process Clause in remaining in halfway house).  Administrative or punitive segregation typically does

17

not implicate either the Due Process clause or a state-created liberty interest.   See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002); Torres, 292 F.3d at 150-52.

The Third Circuit has observed, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that factor should be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection.   Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997)(disciplinary segregation of state prisoner for 15 months did not impose atypical and significant hardship on prisoner, and thus, did not implicate the due process clause).   Here, Ruiz was confined in disciplinary detention for a period of 15 days.   This short period of time, even where he alleges he had to sleep on the floor, does not demonstrate "atypical or significant hardship" necessary to implicate the due process clause. Therefore, this claim will be dismissed with prejudice for failure to state a claim.

V.   CONCLUSION

For the reasons set forth above, plaintiff's excessive force claim will be allowed to proceed at this time.   However, the claim asserting denial of disciplinary due process will be

dismissed with prejudice, in its entirety, as against the defendant, for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate order follows.


                                    s/Robert B. Kugler
                                    ROBERT B. KUGLER
                                    United States District Judge
Dated: December 22, 2009